# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
　　　　　　*Plaintiff-Appellee,*

　　　　v.

JAY KENT,
　　　　　　*Defendant-Appellant.*

No. 10-10011

D.C. No.
3:08-cr-00890-
MMC-2

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the Northern District of California
Maxine M. Chesney, Senior District Judge, Presiding

Argued and Submitted
November 2, 2010—San Francisco, California

Filed February 8, 2011
Amended May 24, 2011

Before: Ronald M. Gould and Consuelo M. Callahan,
Circuit Judges, and Edward R. Korman,
Senior District Judge.*

Opinion by Judge Gould

---

*The Honorable Edward R. Korman, Senior United States District
Judge for the Eastern District of New York, sitting by designation.

## COUNSEL

Barry J. Portman, Federal Public Defender, and Daniel P. Blank (argued), Assistant Federal Public Defender, San Francisco, California, for defendant-appellant Jay Kent.

Joseph P. Russoniello, United States Attorney, and Amber S. Rosen (argued), Assistant United States Attorney, San Jose, California, for plaintiff-appellee United States of America.

## ORDER

The opinion in the above-captioned matter filed on February 8, 2011, and published at 633 F.3d 920, is amended as follows:

At slip opinion page 2363, line 12, delete the first two sentences of this paragraph, from <The latter> through <462.>.

At slip opinion page 2364, line 14, insert a paragraph stating: <Accordingly, in the context of pretrial plea negotiations, "vindictiveness will not be presumed simply from the fact that a more severe charge followed on, or even resulted from, the defendant's exercise of a right." *Gamez-Orduno*, 235 F.3d at 462. Kent argues that he is entitled to a presumption of vindictiveness on the ground that the prosecution's decision to file the § 851 information immediately followed, and was causally related to, his choice to enter an unconditional guilty plea. *Gamez-Orduno* directly forecloses that argument.>

Move existing footnote 2 to after <at 462.> in above-inserted text.

Within footnote 2, delete all text following <at 381))>.

Replace existing sentence beginning at slip opinion page 2364, line 14, with <We reject Kent's argument that we should apply a more lenient rule when enhanced charges do not arise from the context of explicit plea negotiations.>

At slip opinion page 2364, lines 27-29, delete <Thus, defendants challenging pretrial charging enhancements cannot avail themselves of a presumption of vindictiveness.>

At slip opinion page 2365, lines 16-17, change <Although the pretrial enhancement of charges cannot give rise to a presumption of prosecutorial vindictiveness> to <Although a presumption of vindictiveness is unavailable in this case>.

At slip opinion page 2365, line 20, change <*id.*> to <*Goodwin*, 457 U.S.>.

The panel has voted to deny the petition for panel rehearing. Judges Gould and Callahan have voted to deny the peti-

tion for rehearing en banc, and Judge Korman has so recommended. The full court has been advised of the petition for rehearing en banc and no judge has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35. The petition for panel rehearing and the petition for rehearing en banc are denied.

No future petitions for rehearing or rehearing en banc will be entertained.

**IT IS SO ORDERED.**

---

## OPINION

GOULD, Circuit Judge:

Jay Kent's appeal of his conviction and sentence for drug distribution offenses requires us to decide two questions: First, once a defendant has stated before the district court his or her intention to enter a guilty plea, is it an abuse of that court's discretion to accept a prosecutor's filing of enhanced charges against the defendant? Second, does a prosecutor act with impermissible vindictiveness when he or she makes good on a plea bargaining threat to enhance charges against a defendant, despite the defendant's willingness to plead guilty unconditionally? Answering both questions in the negative, we affirm Kent's conviction and sentence.

## I

Kent delivered 22.7 grams of crack cocaine to an FBI source on July 16, 2008, in San Francisco. He was arrested and charged by indictment for conspiring to possess with intent to distribute five grams or more of crack cocaine and possessing with intent to distribute five grams or more of crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1),

841(b)(1)(A)(iii), and 841(b)(1)(B)(iii). The Government did not initially file an information pursuant to 21 U.S.C. § 851 alleging Kent's prior felony convictions, which filing would have very substantially raised the penalty range applicable to Kent's sentence, as it would be changed from between five and forty years, absent the prior felonies, to between ten years and life imprisonment.

After an initial exchange of discovery, Assistant United States Attorney Drew Caputo told Kent's attorney, Daniel Blank, that the Government sought Kent's cooperation as an informant as part of a plea agreement, and that the Government would file the § 851 information if Kent pushed the case toward trial. Blank asked if the Government would file the § 851 information if Kent agreed to plead guilty without cooperating as an informant. Caputo answered, according to Blank, that Caputo believed it would not.[1]

Several days later, Blank left a voicemail message for Caputo conveying Kent's intention to plead unconditionally to the indictment, as well as Kent's lack of interest in a cooperation agreement. Caputo then called back to tell Blank that the Government intended to file the § 851 information unless Kent agreed to cooperate, despite his willingness to plead guilty. Caputo next mailed a letter to Blank, dated February 10, 2009, memorializing the Government's position:

> [W]e intend to file an information alleging your client's prior felony drug convictions unless Mr. Kent agrees to plead guilty pursuant to a plea agreement entered into with the United States. At present, the only plea agreement that the United States is prepared to contemplate entering into with your client is a cooperation agreement.

---

[1]Caputo disputes that he said this. However, the United States has said that this disputed fact is immaterial, and that Kent's account may be taken as true in resolving this appeal.

The United States characterizes this as an offer in the context of plea negotiations, but Blank argues that formal negotiations were never initiated, or, stated differently, that Blank never began negotiating a plea agreement.

Further communications between counsel occurred when they arrived for a status conference in the district court and before the district judge on February 25, 2009. Upon their arrival to court, Blank told Caputo that his client would, at that hearing, seek to enter an unconditional guilty plea. The advantage he sought to exploit in offering a surprise plea was to prevent the Government from enhancing charges against Kent by filing the § 851 information.

Blank began the proceeding by saying, "Good afternoon, your Honor. Daniel Blank on behalf of Mr. Kent. Mr. Kent is in custody. He is hoping to plead today." Within moments, Caputo unequivocally responded:

> [T]he United States is going to file right now an Information for increased punishment by reason of prior felony drug conviction under 21 United States Code Section 851. . . . I'm handing the original to your [Honor's] deputy clerk. I'm handing a service copy to Mr. Blank . . ., and I would ask that the Court arraign Mr. [Kent] on that 851 information in the sense of notifying him of the increased punishment that's specified in paragraph 5 of the information in advance of his entry of the open guilty plea.

In other words, Caputo sought to file, in court, a paper copy of the § 851 information, which had not yet been filed electronically. Blank objected to the courtroom filing, and urged that the district court take Kent's plea before accepting the information. Blank proposed that the court allow the parties an opportunity to prepare briefs, after which the court would decide whether to accept filing of the information before entry of the plea. In a long colloquy with the attorneys, the court

stated its view that filing was a party's unilateral act, accepted the information as filed, and instructed Caputo to deliver the document to the clerk's office for electronic docketing. Blank then opted to defer his client's plea until the parties had briefed whether the now-filed information should be struck.

The parties next appeared before the district court to present argument as to whether the § 851 information should be struck for prosecutorial vindictiveness. Although it was not disputed that the Government filed the § 851 information in response to Kent's stated intention to plead guilty unconditionally rather than pursuant to a cooperation agreement, the district court denied Kent's motion to strike the information. Months later, Kent, with the Government's consent, entered conditional guilty pleas, reserving his right to appeal the issues described above. At a subsequent hearing, the district court sentenced Kent to ten years imprisonment, which is the enhanced mandatory minimum sentence.

Kent timely appealed. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

## II

We first address whether the district court erred in accepting the courtroom filing of the § 851 information after Kent had said he wanted to enter a guilty plea. "[J]udges exercise substantial discretion over what happens *inside* the courtroom," *United States v. Simpson*, 927 F.2d 1088, 1091 (9th Cir. 1991), and when considering such decisions as accepting the filing of a document, our review is for abuse of that discretion. *See Muckleshoot Tribe v. Lummi Indian Tribe*, 141 F.3d 1355, 1358 (9th Cir. 1998) (stating that litigation management decisions are reviewed for abuse of discretion); *Hinton v. Pacific Enters.*, 5 F.3d 391, 395 (9th Cir. 1993) (reviewing application of local rules for abuse of discretion).

**[1]** Federal and local rules govern the proper mode of filing. Federal Rule of Criminal Procedure 49 states that filing

must be made "in a manner provided for a civil action." Fed. R. Crim. P. 49(d). The corollary civil rule, Federal Rule of Civil Procedure 5, provides, "A paper is filed by delivering it . . . to a judge who agrees to accept it for filing, and who must then note the filing date on the paper and promptly send it to the clerk." Fed. R. Civ. P. 5(d)(2). Further, "[a] court may, by local rule, allow papers to be filed . . . by electronic means . . . ." Fed. R. Civ. P. 5(d)(3). The Northern District of California's applicable local rule provides, "In any case subject to electronic filing, all documents required to be filed with the Clerk shall be filed electronically on the ECF web site, *except as . . . authorized otherwise by the court*." N.D. Cal. Gen. Ord. 45(VI)(A) (emphasis added). Here, the district court's decision to authorize the courtroom filing of an information was entirely permissible under these controlling rules.

Kent relies upon Ninth Circuit precedents that bar district courts from rejecting entered pleas. *E.g.*, *Garcia-Aguilar v. U.S. Dist. Ct. for S. Dist. of Cal.*, 535 F.3d 1021, 1025 (9th Cir. 2008); *In re Vasquez-Ramirez*, 443 F.3d 692, 695-96 (9th Cir. 2006). But, as we see it, these precedents have no relevance to this appeal. First, the district court never rejected Kent's plea. Kent was free to plead at the hearing, but instead opted to wait in light of the court's acceptance of the § 851 information. Second, these precedents involve rejection of pleas that have satisfied the requirements of Rule 11. *See Vasquez-Ramirez*, 443 F.3d at 695-96 ("[I]t is clear that a court must accept an unconditional guilty plea, so long as the Rule 11(b) requirements are met."). Here, the plea was not entered and the requirements of Rule 11 had not been satisfied.

**[2]** A district court need not drop everything to conduct a Rule 11 colloquy the moment a defendant offers to enter a guilty plea. "All federal courts are vested with inherent powers enabling them to manage their cases and courtrooms effectively . . . ." *Aloe Vera of Am., Inc. v. United States*, 376 F.3d 960, 964-65 (9th Cir. 2004) (per curiam) (quoting *F.J.*

*Hanshaw Enters., Inc. v. Emerald River Dev., Inc.*, 244 F.3d 1128, 1136 (9th Cir. 2001)). The federal appellate courts should hesitate to intrude upon the "broad inherent powers [of district courts] to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Sherman v. United States*, 801 F.2d 1133, 1135 (9th Cir. 1986) (internal citation and quotation marks omitted). We hold that the district court committed no error when, before taking Kent's plea, it first accepted the Government's filing of an information.

## III

**[3]** We next address whether a prosecutor who carries out a plea bargaining threat to enhance charges against a defendant, despite the defendant's willingness to plead guilty unconditionally, acts with impermissible vindictiveness.

## A

**[4]** For more than two decades, our vindictive prosecution cases have said that the standard of review is unsettled in this circuit. *E.g.*, *United States v. Gann*, 732 F.2d 714, 724 (9th Cir. 1984). In recent years, all of our vindictive prosecution cases, after mentioning the uncertainty of our precedents, have proceeded to apply de novo review. *E.g.*, *United States v. Jenkins*, 504 F.3d 694, 699 (9th Cir. 2007); *United States v. Lopez*, 474 F.3d 1208, 1211 (9th Cir. 2007). Review for abuse of discretion may have been appropriate when district judges based determinations of vindictive prosecution, like other findings of attorney misconduct, on their subjective perceptions of the litigation unfolding in their courtrooms. *See, e.g.*, *United States v. Griffin*, 617 F.2d 1342, 1348 (9th Cir. 1980) ("Consideration of the vindictive prosecution claim necessitates, in some cases, an ad hoc determination of whether the defendant has reason to perceive a vindictive motive."). Review for clear error may have been appropriate—and may still be appropriate—when a determination of

vindictive prosecution turned upon factual findings. *See, e.g.*, *United States v. DeMarco*, 550 F.2d 1224, 1226 (9th Cir. 1977) (holding that factual findings necessary to determination of vindictive prosecution were "amply supported by the record"). Since a robust doctrine of vindictive prosecution has developed, however, our review is now more commonly for mistakes of law, for which de novo review is appropriate. *See United States v. Barner*, 441 F.3d 1310, 1315 (11th Cir. 2006). We therefore take this opportunity to clarify that where our vindictive prosecution inquiry turns upon a district court's proper application of the law, our review is de novo.

**B**

**[5]** "A prosecutor violates due process when he seeks additional charges solely to punish a defendant for exercising a constitutional or statutory right." *United States v. Gamez-Orduno*, 235 F.3d 453, 462 (9th Cir. 2000) (citing *Bordenkircher v. Hayes*, 434 U.S. 357, 363 (1978)). A defendant may establish vindictive prosecution (1) "by producing direct evidence of the prosecutor's punitive motivation . . . ," *United States v. Jenkins*, 504 F.3d 694, 699 (9th Cir. 2007), or (2) by showing that the circumstances establish a "reasonable likelihood of vindictiveness," thus giving rise to a presumption that the Government must in turn rebut, *United States v. Goodwin*, 457 U.S. 368, 373 (1982).

**[6]** For good reasons, the Supreme Court has urged deference to pretrial charging decisions. "In the course of preparing a case for trial, the prosecutor may uncover additional information that suggests a basis for further prosecution or he simply may come to realize that information possessed by the State has a broader significance. At [the pretrial] stage . . . , the prosecutor's assessment of the proper extent of prosecution may not have crystalized." *Goodwin*, 457 U.S. at 381. Also, in the plea negotiation context, the prosecutor's latitude to threaten harsher charges to secure a plea agreement advances the interest in avoiding trial shared by the prosecu-

tor, defendant, and public. *Bordenkircher*, 434 U.S. at 363-64. Finally, prompting prosecutors to file the harshest possible charges at the outset "would [cause] prejudic[e] to defendants, for an accused 'would bargain against a greater charge, face the likelihood of increased bail, and run the risk that the court would be less inclined to accept a bargained plea.' " *Goodwin*, 457 U.S. at 378 n.10 (quoting *Bordenkircher*, 434 U.S. at 368 (Blackmun, J., dissenting)). Allowing prosecutors the leeway at first to withhold more severe charges also spares defendants damage to their reputation that could result from the piling on of charges. *Id.* For these reasons, the prosecutor's "initial [charging] decision should not freeze [his or her] future conduct." *Goodwin*, 457 U.S. at 382.

Accordingly, in the context of pretrial plea negotiations, "vindictiveness will not be presumed simply from the fact that a more severe charge followed on, or even resulted from, the defendant's exercise of a right." *Gamez-Orduno*, 235 F.3d at 462.[2] Kent argues that he is entitled to a presumption of vindictiveness on the ground that the prosecution's decision to file the § 851 information immediately followed, and was causally related to, his choice to enter an unconditional guilty plea. *Gamez-Orduno* directly forecloses that argument.

We reject Kent's argument that we should apply a more lenient rule when enhanced charges do not arise from the context of explicit plea negotiations. Our cases do not draw this distinction, *Austin*, 902 F.2d at 745, and we are admonished against expanding the class of cases to which the vindictiveness presumption applies, *Wasman v. United States*, 468 U.S. 559, 566-67 (1984). Although enhanced charges will often accompany failed plea negotiations, prosecutors may add charges pretrial for any number of permissible reasons, such

---

[2]*See also United States v. Austin*, 902 F.2d 743, 745 (9th Cir. 1990) ("That the prosecution adds charges pretrial after a defendant asserts some right does not establish a presumption of vindictiveness." (citing *Goodwin*, 457 U.S. at 381)).

as coming to a new understanding of the crime or evidence. *Goodwin*, 457 U.S. *at* 381. The Supreme Court has urged deference to a prosecutor's discretion to elevate charges in light of the pretrial "timing" of such conduct, not just its factual context. *Id.*

**[7]** Kent's argument fails for a second reason: The enhanced charges in his case *did* arise in the plea negotiation context. By letter to Kent's attorney dated February 10, 2009, the Government made a plea offer, threatening to file the § 851 information "unless Mr. Kent agrees to plead guilty pursuant to . . . a cooperation agreement." At the February 25th hearing, Kent effectively rejected this plea offer by stating his intention to enter an unconditional plea rather than cooperate. In response, the United States carried out its plea threat by filing the § 851 information. Kent offers no authority for the untenable proposition that a defense attorney who does not respond to a written plea offer has unilaterally opted out of negotiations. Our cases suggest just the opposite. *See, e.g.*, *Gamez-Orduno*, 235 F.3d at 463 (holding that a prosecutor's letter threatening to seek a superceding indictment established "the context of plea negotiations"). But even if we accept Kent's premise that he stopped short of engaging in plea negotiations, it does not alter the prosecutor's broad discretion to make a charging decision. As a general matter, prosecutors may charge and negotiate as they wish.

## C

**[8]** Although a presumption of vindictiveness is unavailable in this case, a defendant may still establish vindictive prosecution by adducing direct evidence that punitive motives precipitated the harsher charges. *See Goodwin*, 457 U.S. at 384 ("[W]e of course do not foreclose the possibility that a defendant in an appropriate case might prove objectively that the prosecutor's [pretrial] charging decision was motivated by a desire to punish him . . . ."). As a matter of law, the filing of additional charges to make good on a plea bargaining threat

—as occurred here—will not establish the requisite punitive motive, however. "[I]n the 'give-and-take' of plea bargaining, there is no such element of punishment or retaliation so long as the accused is free to accept or reject the prosecution's offer." *Bordenkircher*, 434 U.S. at 363.

Kent argues that a prosecutor may carry out a plea bargaining threat of enhanced charges only when a defendant has refused to plead guilty, not when he or she has rejected other Government conditions. Our precedent has rejected this position. In *United States v. North*, we stated, "The government may, in the course of plea bargaining, offer to reduce charges or threaten reindictment under more serious charges, and it may make good on either promise. *It may do the same in seeking cooperation in related prosecutions*." 746 F.2d 627, 632 (9th Cir. 1984) (emphasis added) (citations omitted), *abrogated on other grounds by Jacobson v. United States*, 503 U.S. 540, 547 n.1 (1992). We reaffirm this rule.

**[9]** We have sanctioned the conditioning of plea agreements on acceptance of terms apart from pleading guilty, including waiving appeal, *United States v. Navarro-Botello*, 912 F.2d 318, 321 (9th Cir. 1990), disclosing evidence, *United States v. Acuna*, 9 F.3d 1442, 1445 (9th Cir. 1993), providing testimony, *Morris v. Woodford*, 273 F.3d 826, 836 (9th Cir. 2001), and cooperating as an informant against others*, United States v. Gardner*, 611 F.2d 770, 773 (9th Cir. 1980). If prosecutors may permissibly demand these conditions, it follows that they may make good on threats to enhance charges if these conditions are not accepted. *See United States v. Stanley*, 928 F.2d 575, 579 (2d Cir. 1991) ("[S]o long as the defendant was free to accept or reject the prosecutor's offer, the prosecutor may carry out his threat." (citing *Bordenkircher*, 434 U.S. at 363-65)). We hold that a prosecutor who, in the plea negotiation context, threatens enhanced charges to induce a defendant's cooperation as an informant may carry out that threat if the defendant declines

to cooperate, regardless of the defendant's willingness to plead guilty unconditionally to the lesser charges.[3]

**[10]** "[U]nder our system of separation of powers, the decision whether to prosecute, and the decision as to the charge to be filed, rests in the discretion of the Attorney General or his delegates, the United States Attorneys." *United States v. Edmonson*, 792 F.2d 1492, 1497 (9th Cir. 1986). "A prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution." *Goodwin*, 457 U.S. at 382. "[D]ue process does not in any sense forbid enhanced sentences or charges, but only enhancement motivated by actual vindictiveness toward the defendant for having exercised guaranteed rights." *Wasman*, 468 U.S. at 568. The record here is devoid of evidence that the Government, in filing the § 851 information, was motivated by vindictiveness toward Kent.

**AFFIRMED.**

---

[3]We recently said in a related context in *United States v. Morris*:

> Unlike *Bordenkircher*, the government's offer was conditioned on Morris's testifying in another trial. But we have repeatedly held that deals conditioned on cooperation are permissible. *See, e.g., United States v. Gardner*, 611 F.2d 770, 773 (9th Cir. 1980); *see also People of the Territory of Guam v. Fegurgur*, 800 F.2d 1470, 1472 (9th Cir. 1986). The government premised the plea bargain on Morris giving up many rights, including his statutory right to seek release. Relinquishment of such rights is an acceptable part of most plea deals.

No. 10-10009 (9th Cir. Feb. 2, 2011).